**Docket No. 12-55102**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

RANDALL FERGUSON,

*Plaintiff-Appellant,*

v.

WELLS FARGO BANK, NA,

*Defendant-Appellee.*

_____

*Appeal from a decision of the United States District Court for the*
*Central District of California, No. 11-cv-02043-PA-SH · Honorable Percy Anderson*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

WILLIAM J. WALL, ESQUIRE
THE WALL LAW OFFICE,
A PROFESSIONAL CORPORATION
9900 Research Drive
Irvine, California 92618
(949) 387-4300

JAMES A. FRANCIS, ESQUIRE
JOHN SOUMILAS, ESQUIRE
GEOFFREY H. BASKERVILLE, ESQUIRE
FRANCIS & MAILMAN
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

*Attorneys for Plaintiff-Appellant, Randall Ferguson*



COUNSEL PRESS · (800) 937-7853                    PRINTED ON RECYCLED PAPER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

I.    Contrary To Wells Fargo's Position, There Exists A Genuine Issue Of Material Facts As To How The Bankruptcy Remark Error Occurred In The First Place ........................................................................... 1

II.   It Is Undisputed That Wells Fargo Furnished At Least Most Of The Account Information Disputed On The ACDV Forms ......................... 2

III.  The Plain Language of FCRA Section 1681s-2(b) Favors Mr. Ferguson's Position That Wells Fargo Was Required To Investigate And Correct Any Inaccurate Information ................................................ 5

IV.   There Exists A Genuine Issue Of Material Fact As To Whether Wells Fargo's Investigations Were "Reasonable" ............................................ 7

V.    Wells Fargo's Position Is At Odds With This Circuit's Precedent In *Gorman v. Wolpoff & Abramson* ................................................................ 10

VI.   Whether Wells Fargo's FCRA Violations Were "Willful" Is Not Before This Court, And Is A Jury Question In Any Event ................................... 12

      A.   The FCRA Willfulness Legal Standards .......................................... 13

      B.   FCRA Recklessness Further Defined .............................................. 14

      C.   Many Courts Have  Held That The Jury Should Decide Whether A Defendant Acted With Reckless Disregard .................................. 15

      D.   The District Court Erred In Finding That There Was No Genuine Issue Of Material Fact That Wells Fargo, As A Furnisher Of Information That Was Disputed, Was Required To Comply With FCRA Section 1681s-2(b) In This Case ......................................... 17

      E.   *Safeco's* " Reasonable Reading" Language Regarding The Term "Increase" Under FCRA Section 1681m Is Not Helpful To Wells Fargo Here ............................................................................. 19

i

VII.   CONCLUSION........................................................................................ 21

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

CERTIFICATE OF FILING AND SERVICE

# TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

## CASES

*Abusaab v. Equifax Info., Servs., LLC*,
   Civ. No. 05-5094, 2006 WL 1214782 (E.D. Pa. May 4, 2006) .........................16

*Apodaca v. Discover Financial Services*,
   417 F. Supp. 2d 1220 (D. N.M. 2006) ...................................................16

*Brim v. Midland Credit Management, Inc*,
   2011 WL 2665785 (N.D. Ala. May 4, 2011) ........................................16

*Cortez v. Trans Union, LLC*,
   617 F.3d 688 (3d Cir. 2010) ...................................................................7

*Drew v. Equifax Info. Servs., LLC*,
   No.11-15008, ___ F.3d___, 2012 WL 3186110 (9th Cir. Aug. 7, 2012) ... *passim*

*Equitable Life Ins. Co. of Iowa v. Halsey, Stuart & Co.*,
   312 U.S. 410 (1941) .............................................................................15

*Evantash v. G.E. Capital Mortg. Servs. Inc.*,
   2003 WL 22844198 (E.D. Pa. Nov. 25, 2003) ........................................ 9, 16, 17

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ...........................................................................14

*Galen v. County of Los Angeles*,
   477 F.3d 652 (9th Cir. 2007) ................................................................2

*Gorman v. Wolpoff & Abramson*,
   584 F.3d 1147 (9th Cir. 2009) ........................................................ *passim*

*Guimond v. Trans Union Credit Information Co.*,
   45 F.3d 1329 (9th Cir. 1995) ........................................................ 7, 17

*Johnson v. MBNA*,
   357 F.3d 426 (4th Cir. 2004) ........................................................ 7, 20

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ..................................................................15

*Montclair v. Ramsdell*,
   107 U.S. 147 (1883) ..................................................................14

*Reynolds v. Hartford Fin. Servs. Group*,
435 F.3d 1081 (9th Cir. 2006) ................................................16

*Safeco Ins. Co. of Amer. v. Burr*,
   551 U.S. 47 (2007). ........................................................ *passim*

*Sampson v. Equifax Info. Servs. LLC*,
   Civ. No. 04-187, 2005 WL 2095092 (S.D. Ga. Aug. 29, 2005) .........16

*Saunders v. Branch Banking & Trust Co.*,
   526 F.3d 142 (4th Cir. 2008) ....................................... *passim*

*Shames-Yeakel v. Citizens Bank*,
   677 F. Supp. 2d 994 (N.D. Ill. 2009) ....................................16

*Time, Inc. v. Hill*,
   385 U.S. 374 (1967) ..................................................................15

*U.S. v. Menasche*,
   348 U.S. 528 (1955) ..................................................................14

## STATUTES

15 U.S.C. §§ 1681a ......................................................................13

15 U.S.C. § 1681i(a) ................................................................5, 6

15 U.S.C.§ 1681m ................................................................ 19, 20

15 U.S.C.§ 1681n(a) ............................................................ 13, 19

15 U.S.C. § 1681s-2(b) ..................................................... *passim*

15 U.S.C. § 1681s-2(b)(1)(E) ............................................. 8, 21

# OTHER AUTHORITIES

W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON LAW OF
   TORTS § 34, p. 212-214 (5th ed. 1984) ...............................................................14

RESTATEMENT (SECOND) OF TORTS § 500, p. 587 (1963-1964) ........................ 14-15

Appellant Randall Ferguson hereby replies to Appellee Wells Fargo Bank, N.A.'s ("Wells Fargo" or "Bank") responsive brief. DktEntry 16. Wells Fargo's responsive brief makes several incorrect factual and legal assertions, which Mr. Ferguson addresses below.

## I.    Contrary To Wells Fargo's Position, There Exists A Genuine Issue Of Material Facts As To How The Bankruptcy Remark Error Occurred In The First Place

In this case, the parties agree that no bankruptcy remark should have appeared on Mr. Ferguson's credit report because Mr. Ferguson has never filed for bankruptcy. Wells Fargo assumes throughout its responsive brief that the consumer reporting agency ("CRA") Trans Union must have "created" or "caused" the erroneous bankruptcy remark on its own. *See* DktEntry 16 at pp. 4, 7, 8, 12, 16, 22. But the record here shows that there exists a genuine issue of material fact about the origins of the erroneous bankruptcy remark.

Contrary to Wells Fargo's statements, no witness in this case actually knew where, when or how the bankruptcy remark came about. Wells Fargo's own witness Mr. Duran agreed at his deposition that generally "the credit reporting agencies will report the information that Wells Fargo provides to them." (ER270-271). Although Mr. Ferguson sued Trans Union, he never claimed that Trans Union fabricated or invented the bankruptcy remark out of thin air. Moreover, both Mr. Ferguson's and Wells Fargo's experts opined that Wells Fargo generally

1

furnishes information about its accounts to the national CRAs through the "Metro-2" system used by the credit reporting industry. (ER192-96, 341-47). The Metro-2 tapes used for such data communications by furnishers to CRAs were never produced in this case, although Wells Fargo's highly coded and partially redacted "440 records" apparently do not show a bankruptcy remark for Mr. Ferguson. Thus, there is no agreement here, and certainly no undisputed evidence, that Trans Union is the cause or origin of the inaccurate bankruptcy remark.

Mr. Ferguson is not suggesting that Wells Fargo cannot make an argument based upon inferences that Trans Union on its own created or caused the erroneous bankruptcy remark. But that is an argument for the jury. At summary judgment, the inferences must be made in the favor of the non-movant, Mr. Ferguson. *See Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). Thus, even if the origins of the bankruptcy remark are germane to the disposition of Mr. Ferguson's FCRA section 1681s-2(b) claim, Wells Fargo is not entitled to summary judgment.

## II.   It Is Undisputed That Wells Fargo Furnished At Least Most Of The Account Information Disputed On The ACDV Forms

The true origins of the bankruptcy remark, apart from being a jury issue, do not get Wells Fargo very far in this case. The inquiry in an FCRA section 1681s-2(b) case, such as the one at bar, is whether Wells Fargo was the furnisher of "any" of the disputed information. 15 U.S.C. § 1681s-2(b). That analysis usually

2

revolves around how the notice of dispute was characterized in the consumer reporting agency forms known as ACDVs. *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1160 (9th Cir. 2009). (*See also* ER 193-94, 346). Those ACDV forms, which constitute the dispute notice here, make it clear that Mr. Ferguson was disputing the Wells Fargo account.

Wells Fargo's responsive brief does short work of the ACDVs. But those records are the most important evidence of what "information" was "disputed" in this case and who "furnished" that information. The first ACDV, dated August 11, 2009, characterized Mr. Ferguson's "dispute" as follows:

> 107: Special Comments/Compliance Condition Code/Narrative Remarks." "Very Special Comments/Compliance Condition Code/Narrative Remarks. (*Id.*).
> 019: Included in bankruptcy of another person. Verify ECOA Code, Consumer Information Indicator, Account Status, and Current Balance.

(ER185). The second ACDV, dated August 19, 2009, stated that the dispute was:

> 019: Included in bankruptcy of another person. Verify ECOA Code, Consumer Information Indicator, Account Status, and Current Balance.
> 101: Not liable for account (*i.e.*, ex-spouse, business). If liable, provide or confirm complete ID and ECOA Code.
> FCRA relevant Information: Confused with Leila Shipman she may have filed bkrupcy.

(ER222). (*See also* ER495-496, 498-499) (Wells Fargo's copies of Mr. Ferguson's two ACDV disputes).

3

Both ACDVs were directed to "Wells Fargo Bank." Moreover, both ACDVs are returned to Trans Union signed by a Wells Fargo employee, Eddie Duran, at their end verifying the accuracy of the "entire item." (ER496, 499). Both ACDVs begin by identifying the "account number" of the account at issue. (ER495, 498).

Under these circumstances, Wells Fargo cannot credibly argue that it was not the furnisher of "any" disputed information. Even if assuming, *arguendo*, that Trans Union invented the bankruptcy remark completely on its own, Wells Fargo would still have furnished the various compliance codes, account indicators, account status, balance, and other account status information that is actually being disputed through the ACDVs.

Moreover, Wells Fargo admits to conducting an investigation. A person who was not the furnisher of the disputed information would have no reason to conduct an investigation.

These facts, when viewed in the light most favorable to Mr. Ferguson, present a genuine issue of material fact as to whether Wells Fargo had a duty to investigate Mr. Ferguson's disputes in the case at bar as the furnisher of any information. *See Drew v. Equifax Info. Servs., LLC*, No.11-15008, ___ F.3d___, 2012 WL 3186110 (9th Cir. Aug. 7, 2012) (reversing summary judgment for furnisher bank which received general brief notice of dispute via CRA).

4

Summary judgment for Wells Fargo was thus inappropriate.

## III. The Plain Language of FCRA Section 1681s-2(b) Favors Mr. Ferguson's Position That Wells Fargo Was Required To Investigate And Correct Any Inaccurate Information

After erroneously assuming that none of the disputed information in this case was, in fact, furnished by it, Wells Fargo then erroneously concludes that under a plain text reading of FCRA section 1681s-2(b) it does not have to correct anybody else's mistakes. *See* DktEntry 16 at pp. 13, 17.

The obvious problem with Wells Fargo's legal position is that the plain text of the FCRA says no such thing. The FCRA imposes certain duties upon CRAs and furnishers of credit information to investigate, reinvestigate and correct inaccurate information. *See* 15 U.S.C. § 1681i(a) (CRAs) & 15 U.S.C. § 1681s-2(b) (furnishers). The statute does not limit those duties only to those who "created" or "caused" or "originated" the inaccuracy.

Just recently this Court explained that both a CRA and a furnisher can be liable under the FCRA for failing in their own separate duties to reasonably investigate and correct credit reporting inaccuracies. *See Drew v. Equifax Info. Servs., LLC*, No.11-15008, ___ F.3d___, 2012 WL 3186110 (9th Cir. Aug. 7, 2012). *Drew* was an FCRA case tried to a verdict against Equifax, a national CRA which failed to properly correct from the consumer-plaintiff's credit report certain fraudulent accounts. Equifax was found liable. But one of the furnishers of those

5

fraudulent accounts, Chase, prevailed at summary judgment against Plaintiff's FCRA section 1681s-2(b) claim. This Court reversed that summary judgment ruling because Chase had failed in its own investigation duties, and ordered that the case against Chase must also proceed to trial. *Drew,* 2012 WL 3186110, at * 3-6.

Drew illustrates that, contrary to Wells Fargo's view, both a CRA and a furnisher may bear liability under the FCRA in relation to the reporting of an inaccurate credit account. Similarly, here, both Trans Union and Wells Fargo can be liable to Mr. Ferguson under the FCRA.

Moreover, *Drew* illustrates that the FCRA duties found at section 1681i(a) (CRAs) and 1681s-2(b) (furnishers) are not concerned with who  -- CRA, furnisher or a third party, such as an identity thief -- actually caused the inaccuracy in the first place.   The inquiry revolves around who had notice of the inaccuracy, what the notice explained, the qualitative reasonableness of the investigation, and whether any corrective action could have been taken.

Under the circumstance of the case at bar, Wells Fargo cannot escape liability by arguing that the plain text of FCRA section 1681s-2(b) did not require it to investigate or correct any error.

**IV.    There Exists A Genuine Issue Of Material Fact As To Whether Wells Fargo's Investigations Were "Reasonable"**

Wells Fargo's position that it had no duty under the FCRA is further undermined by its own admission that it did, in fact, conduct two investigations into Mr. Ferguson's two ACDV disputes.  Of course, there would have been no need for any investigation if Wells Fargo actually had no FCRA duties at all as a credit furnisher in this instance.

In the case of an investigation, the inquiry becomes whether the investigation was reasonable and whether it corrected the inaccuracy.  In the case at bar, as in most such cases, that is a question for the jury. *See Gorman* and *Drew, supra.*[1]

The District Court below did not reach the issue of reasonableness, since it found that Wells Fargo had no duties at all as a furnisher.  Wells Fargo here requests that this Court affirm summary judgment in its favor on the alternative grounds that its investigations were reasonable as a matter of law.   *See* DktEntry 16 at pp. 10, 24.  Such a finding, however, would not be appropriate.

The evidence of record here in the form of the CDIA manual (ER 187-90, 363-80), testimony from Trans Union (ER230-33), and the parties' conflicting

---

[1]      *See also Cortez v. Trans Union, LLC,*  617 F.3d 688, 709 (3d Cir. 2010); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148-49 (4th Cir. 2008); *Johnson v. MBNA*, 357 F.3d 426, 431-32 (4th Cir. 2004); *Guimond v. Trans Union Credit Information Co., 45 F.3d 1329* (9th Cir. 1995).

7

expert reports (ER192-96, 341-47) demonstrates that the issue of whether Wells Fargo was reasonable in its investigations and corrective action is factually contested and not suitable for summary judgment. *See Gorman* and *Drew, supra*.

For example, a reasonably jury here can find that Wells Fargo failed in its duty under 15 U.S.C. § 1681s-2(b)(1)(E) to "modify," "delete" or "permanently block" the reporting of an inaccurate item of credit information after receiving proper notice of such an inaccuracy through a CRA.   Indeed, Wells Fargo did not use the "Q" code to remove the "bankruptcy" remark, as required by the CDIA industry manual, which is the procedure that the Bank allegedly uses.

There can be no serious doubt that Wells Fargo failed in this duty, and Wells Fargo knew it, because approximately one week after Mr. Ferguson's August 11, 2009 dispute, the Bank received two more disputes concerning the same inaccuracy, which was still present on Mr. Ferguson's credit report and had not been corrected.

Regardless of what it said at summary judgment was its "intention," the fact is that Wells Fargo did not, in fact, "modify," "delete" or "permanently block" the reporting of an inaccurate bankruptcy after receiving proper notice.  It thus violated FCRA section 1681s-2(b)(1)(E).[2]

---

[2]    At least one trial court that has examined the investigation duty of credit furnishers, such as Wells Fargo, specifically in a case where a consumer disputed an inaccurate "bankruptcy" remark on the furnisher's account and where the

8

Minimally, summary judgment should be denied here, and this case should proceed to a jury trial, because the parties have presented irreconcilably conflicting expert reports and other evidence as to what Wells Fargo should have done under the CDIA industry guiltiness to address Mr. Ferguson's disputes. (*See* ER192-96, 341-47).

Further, Wells Fargo admits that it did not mark Mr. Ferguson's account as disputed using the XB code in the Condition Compliance Code field of the ACDVs. A reasonable jury can also find that this omission alone was at least a negligent violation of FCRA section 1681s-2(b).

The CDIA industry manual that Wells Fargo claims to follow provides specifically how an account may be marked as "disputed" pursuant to the FCRA -- it is through the use of the "XB" code in the Compliance Condition Codes or "CCC" field. (ER189) ("XB -- Account information disputed by consumer under the Fair Credit Reporting Act"). (*See* ER342) (Wells Fargo admits to using CDIA standards). Nevertheless, Wells Fargo never marked the account as "disputed."

Wells Fargo knew that Mr. Ferguson was unsatisfied with the original August 11, 2009 investigation because he disputed the same item again. The subsequent Trans Union ACDV (August 19, 2009) continued to show the

---

furnisher did not correct the remark, found that the consumer may proceed to trial with her under FCRA section 1681s-2(b) claim against that furnisher. *See, e.g., Evantash v. G.E. Capital Mortg. Servs. Inc.*, 2003 WL 22844198, at *6 (E.D. Pa. Nov. 25, 2003). This is also such a case.

inaccuracy on the Wells Fargo account, and Wells Fargo knew this. The inaccurate "bankruptcy" remark also posted on Plaintiff's subsequent credit reports. Yet Wells Fargo never marked the account as disputed.

Furthermore, Wells Fargo's own Rule 30(b)(6) witness testified that, as a generally policy, Wells Fargo will never mark actually disputed credit accounts as "disputed" unless a case is in litigation or an investigation is ongoing for longer than two days, and then notes the dispute only during the pendency of the investigation. (ER236, 241-43). This is not an FCRA standard. The FCRA requires that a meritoriously disputed account be marked as disputed regardless of whether an "investigation" is pending for more than two days and regardless of whether litigation is pending.

Under the facts of record here, therefore, the reasonableness of Wells Fargo's FCRA section 1681s-2(b) investigations is a question for the jury, and summary judgment would not be appropriate.

## V.    Wells Fargo's Position Is At Odds With This Circuit's Precedent In *Gorman v Wolpoff & Abramson*

Wells Fargo is also incorrect in arguing that this Court's precedent in *Gorman* does not apply to the case at bar. This Court's decision in *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147 (9th Cir. 2009) makes it plain that an "omission" of information (namely, a furnisher's failure to mark a disputed

account as "disputed") can form the basis of FCRA section 1681s-2(b) liability. *Id.* at 1161-62.

There is no dispute that Wells Fargo omitted the "XB" indicator in the Condition Compliance Code section of its account, which would have noted that Mr. Ferguson had a dispute with the reporting of that account. (ER185, 222). Nor is there any dispute that Mr. Ferguson's August 11, 2009 ACDV specifically disputed the status of the Condition Compliance Code. (ER185).

Wells Fargo argues that "[o]mitting the 'in dispute' notation did not render Wells Fargo's reporting of Mr. Ferguson's account 'incomplete or inaccurate'" allegedly because Mr. Ferguson did not have a "bona fide" dispute. DktEntry16 at p. 29. This position, however, is mistaken.

First, it is plain that Mr. Ferguson had a dispute about the Wells Fargo account, since he disputed it twice via ACDV, and once directly. Mr. Ferguson's dispute was neither fabricated nor frivolous. It concerned a very serious error on his credit report which caused him to be denied credit because his potential creditor GE Money Bank thought he had filed for bankruptcy. (*See* ER176). This was a bona fide dispute.

At a minimum, it should be a jury issue in this case whether Mr. Ferguson's dispute was bona fide. Whether a dispute is bona fide is a factual issue that would revolve around the consumer's motivations, his knowledge-base at the time of the

11

dispute, and other factual circumstances. It is not a legal issue, and the District Court below did not even reach it.

Finally, Wells Fargo's contention that Mr. Ferguson's actual dispute was with Trans Union's, not Wells Fargo, assumes a set of facts in conflict with the ones Mr. Ferguson proffered at summary judgment. Wells Fargo also incorrectly assumes that consumers such as Mr. Ferguson have some keen insight about how the credit reporting industry works, who the furnishers are, and how consumer disputes are processed. They do not. Consumers simply follow the instructions available to them on their personal credit reports about how they can dispute inaccurate information. Mr. Ferguson followed those instructions and made a sincere and legitimate dispute about a serious and harmful error in the reporting of his Wells Fargo credit account.

Wells Fargo is thus not entitled to summary judgment, and *Gorman* is applicable to the case at bar.

## VI.    Whether Wells Fargo's FCRA Violations Were "Willful" Is Not Before This Court, And Is A Jury Question In Any Event

Wells Fargo also alternatively argues that even if it violated the FCRA, this Court should find that its violation could not have been willful, and thus should affirm the District Court at least in part. But the District Court never reached the issue of willfulness, or even whether there was a negligent violation. That issue therefore is not before this Court.

12

Nevertheless, under the facts of record in this case, no summary judgment ruling is possible -- as to either negligent or willful FCRA noncompliance -- because Mr. Ferguson has proffered more than sufficient evidence for a reasonable jury to find not only that Wells Fargo violated the FCRA, but that it did so willfully.

### A. The FCRA Willfulness Legal Standards

The FCRA does not define the term "willfully" and does not give any guidance as to how a defendant "willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. §§ 1681a & 1681n. In its only decision on the subject, the U.S. Supreme Court held that Congress intended the term "willfully" within the FCRA to have its "common law usage." *See Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47, 57 (2007). The High Court said that the common law "treated actions in 'reckless disregard' of the law as 'willful' violations." *Id.* It thus concluded that "[t]he standard civil usage thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations." *Id.* (emphasis added).

The U.S. Supreme Court in *Safeco* did not state that a reckless violation is the only one that can be willful under the FCRA: "If, on the other hand, 'willfully' covers both knowing and reckless disregard of the law, knowing violations are sensibly understood as a more serious subcategory of willful ones." *Id.* at 59

13

(*citing U.S. v. Menasche*, 348 U.S. 528, 538-539 (1955) (" '[G]ive effect, if possible, to every clause and word of a statute' ") (*quoting Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))).

Perhaps Congress intended "willfully" to mean other things as well, but as clarified by precedent, willful FCRA violations can be: (1) knowing <u>or</u> (2) reckless.

**B. FCRA Recklessness Further Defined**

With respect to recklessness, the U.S. Supreme Court in *Safeco* observed that "[a]lthough efforts have been made to distinguish" the terms "willful," "wanton," and "reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit." *Id*. at 57 (*citing* W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON LAW OF TORTS § 34, p. 212 (5th ed. 1984)) (hereinafter PROSSER AND KEETON). The High Court further noted that "While 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known *or so obvious that it should be known*.' " *Id.* at 68 (emphasis added) (*quoting Farmer v. Brennan*, 511 U.S. 825, 836 (1994)); *see also* PROSSER AND KEETON § 34, at 213-214.[3]

---

[3]    The *Safeco* Court also cited to the RESTATEMENT (SECOND) OF TORTS, which

14

Although the Court in *Safeco* describes recklessness as an "objective" standard, that finding is entirely consistent with previous U.S. Supreme Court pronouncements in similar contexts which have emphasized that "recklessness" determinations are fact-bound inquiries that must typically be answered by a jury. *See*, *e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991) (in defamation cases, "the evidence creates a jury question whether [defendant] published the statements with knowledge or reckless disregard."); *Time, Inc. v. Hill*, 385 U.S. 374, 394 (1967) ("Where either result finds reasonable support in the record it is for the jury, not for this Court, to determine whether there was knowing or reckless falsehood."); *Equitable Life Ins. Co. of Iowa v. Halsey, Stuart & Co.*, 312 U.S. 410, 420-21 (1941) (In fraud case, "[t]he question of respondent's recklessness was thus submitted to the jury and we think properly so.").

### C.  Many Courts Have Held In FCRA Cases That The Jury Should Decide Whether A Defendant Acted With Reckless Disregard

In applying the reckless disregard standard to the facts of FCRA cases, both

---

defined recklessness with respect to a person's physical safety as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Id.* at 69 (emphasis added) (*quoting* RESTATEMENT (SECOND) OF TORTS § 500, p. 587 (1963-1964)).

15

before and after *Safeco*, many courts have found that, even though recklessness is an objective *legal* standard, the question of whether a particular set of actions or omissions shows a "reckless disregard" of consumer rights is usually a fact-bound inquiry and thus presents a question for the jury.   *See*, *e.g.*, *Reynolds v. Hartford Fin. Servs. Group*, 435 F.3d 1081, 1097-99 (9th Cir. 2006) (discussing meaning of "willfully" with CRA) (reversed by *Safeco* on other grounds, but affirmed by *Safeco* as to "reckless disregard" willfulness standard); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 151-52 (4th Cir. 2008) (upholding FCRA willfulness finding by jury in case where furnisher failed to mark account as disputed despite multiple meritorious disputes by consumer); *Shames-Yeakel v. Citizens Bank,* 677 F. Supp. 2d 994 (N.D. Ill. 2009) (willfulness for jury in FCRA section 1681s-2(b) case); *Evantash v. G.E. Capital Mortg. Servs. Inc.*, 2003 WL 22844198, at *8 (E.D. Pa. Nov. 25, 2003) (permitting willfulness claim to proceed to jury where furnisher failed to correct inaccurate bankruptcy remark despite multiple meritorious disputes by consumer).[4]

---

[4]     *See also Brim v. Midland Credit Management, Inc*, 2011 WL 2665785 (N.D. Ala. May 4, 2011) (upholding FCRA willfulness finding and punitive damages against credit furnisher); *Apodaca v. Discover Fin. Servs., et al.*, 417 F. Supp. 2d 1220, 1229-34 (D.N.M. 2006) (denying motion for summary judgment and permitting consumer to proceed to trial with her FCRA willfulness claim); *Abusaab v. Equifax Info. Servs., LLC*, Civ. No. 05-5094, 2006 WL 1214782, at *2 (E.D. Pa. May 4, 2006) (denying motion for summary judgment and permitting consumer to proceed to trial with FCRA willfulness claim); *Sampson v. Equifax Info. Servs. LLC*, Civ. No. 04-187, 2005 WL 2095092 (S.D. Ga. Aug. 29, 2005) (denying motion for summary judgment and permitting consumer to proceed to trial with FCRA willfulness claim).

**D.    A Reasonable Jury Could Find Wells Fargo's Violations Here To Have Been Willful**

Here, like in most FCRA cases, the issue of willfulness is for the jury.  *See Drew,* 2012 WL 3186110, at * 3-6*; Guimond*, 45 F.3d at 1333-36; *Evantash*, 2003 WL 22844198, at *8.  Mr. Ferguson has proffered a detailed record of multiple disputes received by Wells Fargo concerning a serious error on his otherwise excellent credit report.  Each time Wells Fargo failed to delete, permanently block or otherwise correct the bankruptcy remark.  This was not due to an act of carelessness or human error.  Wells Fargo systemically fails to apply the proper code (the "Q" code) to remove such an error.

Further, and again according to its usual misguided practices, Wells Fargo did not even note that Mr. Ferguson's account was in "dispute."  This is the case despite three disputes by Mr. Ferguson (two via ACDV and one directly to the Bank) and clear Circuit Court guidance -- including from the Ninth Circuit in *Gorman* -- that a credit furnisher must note the disputed status of meritoriously disputed accounts so that the reporting could not be misleading or martially incomplete.  *See Gorman* and *Saunders*, *supra.*

This is not a case of mere negligence or of human error.  This is a case of reckless and irresponsible corporate conduct.  Wells Fargo is one of the largest banks in the U.S.  It surely has thousands of joint account holders where only one of the two account holders has filed for bankruptcy.  It must know how to properly

17

use the "Q" code as provided in the CDIA manual in order to avoid situations such as the one at bar, where a paying customer continues to dispute a false bankruptcy remark erroneously associated with his name and Wells Fargo continues to confirm the bankruptcy remark, instead of deleting it.  As Mr. Ferguson's expert noted, other big banks know how to, and in fact, use the "Q" code.  (ER193-94, 211).

Wells Fargo's conduct in the case at bar shows a reckless disregard of the rights of consumers such as Mr. Ferguson.  Mr. Ferguson could have disputed thirty three times, instead of three, and the error would still not have been corrected.  That is because Wells Fargo is unwilling to change anything about the way it processes credit disputes such as the ones in the case at bar.  If a reasonable jury cannot find recklessness given all of the facts of this case, it is difficult to imagine the circumstances in which a willfulness finding in an FCRA case would be appropriate.

Minimally, this Court should find that under the facts here there exists a genuine issue of material fact on the issue of FCRA willfulness because the parties dispute the basic material facts as to what the appropriate corrective practices should have been and whether Wells Fargo followed them here, as discussed above.  Thus summary judgment is inappropriate.

18

**E.    *Safeco*'s "Reasonable Reading" Language Regarding The Term "Increase" Under FCRA Section 1681m Is Not Helpful To Wells Fargo Here**

In arguing for partial summary judgment on Mr. Ferguson's FCRA willfulness claim, Wells Fargo misapprehends *Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47 (2007). *Safeco* used the phrase "reasonable reading" in finding for the defendant on a willfulness claim under FCRA section 1681m, the FCRA provision at issue in that case. But that part of *Safeco* is not helpful to Wells Fargo here.

In *Safeco*, the Court construed not only the meaning of the word "willfully" under FCRA section 1681n (as discussed above), but also the meaning of the word "increase" under FCRA section 1681m. Safeco had argued that it believed that it was not required to send an "adverse action" notice to first-time customers who were not offered the best insurance rates due to their credit reports. Safeco contended that FCRA section 1681m requires such notices for insurance companies only when there is an "increase" in "any charge or insurance," and consumers who do not *already* have insurance with the company cannot suffer an "increase." *Safeco*, 551 U.S. at 60-61. The Court disagreed: "We therefore hold that the 'increase' required for 'adverse action,' . . . speaks to a disadvantageous rate *even with no prior dealing*; the term reaches initial rates for *new applicants*." *Id*. at 63 (emphasis added).

But because the statutory meaning of the term "increase" under FCRA

19

section 1681m was unclear on its face, and also because there was no FTC guidance or appellate court decision on that issue prior to the *Safeco* case, the U.S. Supreme Court concluded that: "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. The Court thus found that Safeco could not be in willful noncompliance with FCRA section 1681m, relating to adverse action notices for insurance companies, under those circumstances. *Id.*

This part of the *Safeco* decision provides no defense for Wells Fargo here. It goes without saying that Wells Fargo in this case is not an insurance company; this case involves no "adverse action" notices or claims; and no "increase" of insurance rates is at issue. Importantly, this is also not a case where there is any inquiry about any "reading" of any FCRA section or provision. Nor could Wells Fargo now manufacture such a "reading." Wells Fargo has never identified any language within FCRA section 1681s-2(b) that it finds unclear or ambiguous. Unlike the meaning of the word "increase" under FCRA section 1681m at issue in *Safeco*, there is nothing "less than pellucid" about the legal standards at issue here. Multiple Courts of Appeals, including the Ninth Circuit, have construed FCRA 1681s-2(b) repeatedly. *See Gorman*, *Drew, Saunders*, and *Johnson*, *supra*.

20

Moreover, the statutory text at issue here is clear on its face.  Credit furnishers such as Wells Fargo are required to "modify," "delete" or "permanently block" the reporting of an inaccurate item of credit information after receiving proper notice of such an inaccuracy through a CRA.  15 U.S.C. § 1681s-2(b)(1)(E).

Wells Fargo, therefore, had ample guidance as to its duty to conduct reasonable investigation under FCRA section 1681s-2(b), to *correct* inaccurate items of information, and to mark meritoriously disputed Wells Fargo accounts as *disputed*.  This is simply not the case of a defendant searching for court or administrative guidance as to the meaning of a particular statutory duty.  This is a case of reckless noncompliance.  The record here provides more than sufficient evidence on which a jury could reasonably make a willfulness or reckless disregard finding.

Accordingly, to the extent that this Court deems it appropriate to consider the issue of willfulness, it should rule that Wells Fargo is not entitled to summary judgment either on Mr. Ferguson's negligent non-compliance claim or his willful non-compliance claim.

## VII.  Conclusion

For all of the above additional reasons, Mr. Ferguson respectfully requests that this Court reverse the District Court's order granting summary judgment to Wells Fargo and remand this matter back to the District Court.

21

Respectfully Submitted,

/s/ John Soumilas
John Soumilas
Counsel for Plaintiff/Appellant

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

### Case No. 12-55102

1.      This brief complies with the type-volume limitation of Fed. R. App. P 32(a)(7)(B) because, according to the word count feature of Microsoft Office Word 2007, which I used to prepare this brief, it contains 5,433 words, including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in the proportionally spaced typeface using Microsoft Office Word 2007's 14-point Times New Roman typeface.

September 12, 2012

/s/ John Soumilas
John Soumilas
Counsel for Plaintiff/Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 12, 2012.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

September 12, 2012

/s/ John Soumilas
John Soumilas
Counsel for Plaintiff/Appellant